IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MAX D. SIEGEL and ANGELA M. SIEGEL,<br><br>           Plaintiffs,<br><br>    v.<br><br>DEUTSCHE BANK NATIONAL TRUST CO., MORGAN STANLEY DEAN WITTER CAPITAL I, INC. TRUST 2002-NC4, LITTON LOAN SERVICING LP, NEW CENTURY MORTGAGE CORP, S21-T9N-R16 PT S ½ SE 1/4 PARCEL 6 & 7, BUFFALO COUNTY, NEBRASKA (COMMONLY KNOWN AS 3425 W. 56TH STREET, KEARNEY, NEBRASKA),<br><br>           Defendants. | 8:08CV517<br><br>MEMORANDUM AND ORDER |

This matter is before the court on defendants' motion to dismiss or for summary judgment, Filing No. 15. This is an action for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as well as fraud and conspiracy in connection with a mortgage loan made on July 11, 2002.

    I.  Background

This action was commenced on December 1, 2008. In their complaint, plaintiffs allege that they executed a 30-year adjustable rate note in the principal amount of $178,500 on June 11, 2002, with defendant New Century Mortgage Corp. *See* Filing No.1, Complaint at 3, Ex. B. The plaintiffs contemporaneously executed a deed of trust to New Century securing the promissory note with the real property. *Id.*, Ex. C. New Century

assigned the original deed of trust to Deutsche Bank as Trustee for Morgan Stanley. *Id.*, Complaint at 4, Ex. D. On November 1, 2005, defendant Litton Loan Servicing filed a foreclosure complaint on behalf of Deutsche Bank against the plaintiffs. *Id.*, Complaint at 4. Plaintiffs allege that they exercised their right of rescission on March 13, 2007. *Id.* at 5.

Plaintiffs allege that defendants violated the Truth in Lending Act by failing to provide notice of their right to rescind or cancel the loan together with the required dates in the disclosure provided to them at the time the original note and deed of trust were executed. *Id.* at 4-5. They also allege that the Truth in Lending disclosure provided by New Century understated the amount financed by $610 and misstated the annual percentage rate. *Id.* at 5. Further, they allege that defendants did not return the security, to-wit, the promissory note or original deed of trust, to them within twenty (20) days and that the defendants continued with the foreclosure action. *Id.*

In the foreclosure action in Buffalo County, Nebraska, plaintiffs moved for leave to amend their answer to include causes of action they had not previously raised in the foreclosure action, but leave was denied. *Id.* at 5. Plaintiffs also allege that the defendants "failed to foreclose plaintiffs' interest in the real property prior to proceeding to its sale." *Id.* Plaintiffs further allege that the defendants have stated their intent to continue to make negative reports regarding the plaintiffs to national credit reporting agencies. *Id.*

The defendants assert that the plaintiffs' claims are either barred by the statute of limitations or fail to state a claim for relief. In response, the plaintiffs concede that their complaint does not plead facts sufficient to state a claim with respect to their Nebraska

Consumer Protection Act claim and their civil fraud claim.[1] They invoke the doctrine of equitable tolling with respect to their Truth in Lending Act claim and rely on the discovery component of the statute of limitations under the Fair Credit Reporting Act. With respect to the Fair Debt Collection Practices Act, they contend that they have alleged an ongoing violation.

II. Discussion

A. Fed. R. Civ. P. 12(b)(6) Standards

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 n.3. (2007) (*quoting* Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (*quoting Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* (*quoting Scheuer v. Rhodes,* 416

---

[1] Plaintiffs seek leave to amend their complaint with respect to these two claims.

U.S. 232, 236 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* — U.S. —, —,129 S. Ct. 1937, 1949 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully.).

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Twombly,* 550 U.S. at 558; *Iqbal*, — U.S. at —, 129 S. Ct. at 1950 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

      B.  Nebraska Consumer Protection Act

The scope of Nebraska's Consumer Protection Act is limited to "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of

Nebraska." *Eicher v. Mid America Fin. Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008). Based on that language, the Consumer Protection Act only applies to unfair or deceptive practices that affect "the public interest." *Id.* The Act is not available to redress a private wrong where the public interest is unaffected. *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 139 (Neb. 2000). It cannot be applied to isolated transactions between individuals that do not have an impact on consumers at large. *Id.* at 142.

In the present case, the plaintiffs concede that their allegations are deficient. They have not alleged any conduct by defendants that involves multiple plaintiffs or multiple transactions. The gravamen of the plaintiffs' complaint is a single transaction between the plaintiffs and defendants. Plaintiffs' assertion that discovery may reveal similar conduct by defendants with respect to other mortgagees creates only a "mere possibility of misconduct" that does not rise above the speculative level. Accordingly, the court finds the plaintiffs' complaint fails to state a claim for relief under the Nebraska Consumer Protection Act.

Moreover, an action under the Nebraska Consumer Protection Act must be commenced within four years after the cause of action accrues. Neb. Rev. Stat. §59-1612. The cause of action accrued at the time of the mortgage transaction, June 11, 2002, and expired four years later, June 11, 2006. This action was filed on December 1, 2008. The complaint shows on its face that the plaintiffs' claim is time-barred and an amendment of the complaint would be futile.

      C.    Truth in Lending Act

A TILA damages claims is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). A failure to make required disclosures occurs at the time the loan documents are signed. *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (noting that the plaintiffs were in full possession of all information relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the day the loan papers were signed). The "subsection does not bar a person from asserting a violation of the subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or setoff in such action, except as provided by state law." 15 U.S.C. § 1640(e).

The mortgage loan transaction at issue closed on July 11, 2002. The plaintiffs acknowledge that they did not defensively assert any TILA violations in the foreclosure action in Buffalo County, Nebraska. Accordingly, the one-year statute of limitations for damages is applicable and plaintiffs' claims under the TILA are barred.

The complaint also appears to seek rescission of the contract pursuant to TILA. Rescission is governed by 15 U.S.C. § 1635. When a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately. *See* 15 U.S.C. § 1635; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Under 15 U.S.C. § 1635(f), the right of rescission expires three years after the date of the

consummation of the transaction or upon the sale of the property, whichever occurs first. 15 U.S.C. § 1635(f). That provision completely extinguished the right of rescission at the end of the three-year period. *Beach v. Ocwen*, 523 U.S. at 412. Thus, a borrower cannot assert this right to rescind as an affirmative defense in a collection action brought by the lender more than three years after the consummation of the transaction. *Id.* The limitations date is absolute and is not subject to equitable tolling. *Taylor v. The Money Store*, 42 Fed. App'x 932, 933 (9th Cir. 2002).

The plaintiffs signed their loan documents on June 11, 2002. Their right to rescission was extinguished on June 11, 2005. Plaintiffs did not file their complaint until December 1, 2008. Thus, plaintiffs' TILA claim is untimely.

        D.    Fair Debt Collection Practices Act ("FDCPA")

"The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage." 15 U.S.C. § 1692(e); *Peters v. General Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir.2002). The Act "prohibits, inter alia, 'the use or threat of violence, obscene language, publication of shame lists, and harassing or anonymous telephone calls.'" *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1246 (8th Cir. 2006) (quoting 15 U.S.C. § 1692(d)). Debt collectors cannot use false, deceptive, misleading, unfair or unconscionable means to collect or attempt to collect a debt. *Id.* To be held directly liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of "debt collector." *See Heintz v. Jenkins*, 514 U.S. 291, 294, (1995). A "debt collector" under the FDCPA is either (1) "a person" whose business's "principal purpose" is the collection of

debts (whether on behalf of himself or others); or (2) "a person" who "regularly" collects debts on behalf of others (whether or not it is the principal purpose of his business). 15 U.S.C. § 1692a(6). The "distinction between creditors and debt collectors is fundamental to the FDCPA," because the Act "does not regulate creditors' activities at all." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); *Schmitt v. FMA Alliance*, 398 F.3d 995, 998 (8th Cir. 2005). A mortgage foreclosure is not a debt collection activity. *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, No. 06-3103, 2007 WL 2695795, at *3-4 (D. Minn. Sept. 12, 2007) (stating that security enforcement activities fall outside the scope of the FDCPA).

In short, since foreclosing on a home is not debt collection and defendants are not debt collectors, plaintiffs cannot state a claim based on defendants' actions in foreclosing on their home. There are no other allegations in the complaint that support a claim under the FDCPA. There are no factual assertions whatsoever that the plaintiffs suffered any abusive collection practices. Accordingly, the plaintiffs' complaint fails to state a claim under the FDCPA. Moreover, the FDCPA claim is also time-barred. 15 U.S.C. § 1692(k)(D) requires the action to be brought within one year from the date on which the violation occurs. The last actionable date in this case would have been the date of the foreclosure, November 1, 2005.

    E.    Fair Credit Reporting Act ("FCRA")

The FCRA provides a basis for a variety of actions depending on the facts and the characteristics of the parties. *See, e.g.*, 15 U.S.C. § 1681d (disclosure of investigative consumer reports); 1681m (requirements on users of consumer reports); 1681n (civil liability

for willful noncompliance); § 1681o (civil liability for negligent noncompliance); 1681q (knowingly and willfully obtaining information on a consumer from a consumer reporting agency under false pretenses); 1681r (unauthorized disclosures by officers or employees). The FCRA requires that those who furnish information to credit reporting agencies (1) provide accurate information to those agencies, and (2) investigate the accuracy of information they have provided upon receiving notice of a dispute. 15 U.S.C. § 1681s-2 (a), (b). The current version of the FCRA, requires commencement of a civil action "not later than the earlier of: (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. A consumer must allege that a credit reporting agency prepared a credit report containing inaccurate information to state a claim under the FCRA. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

The only allegations in the plaintiffs' complaint that relate to credit reporting are that "[p]laintiffs are informed that Defendants have made and intend to continue making negative credit reports regarding plaintiffs to national credit reporting agencies" and also allege that "such actions were known by defendants to constitute violations of the FCRA and defendants showed willful disregard for the rights of plaintiffs as secured thereby." The plaintiffs do not specify the particular provisions of the Act that were allegedly violated, nor do they identify the capacity in which the defendants were acting or any specific actions that were taken. Further, they do not allege that the negative credit references were incorrect. An allegation that defendants violated the FCRA, 15 U.S.C. § 1681 *et seq.*, without more, does not give the defendants fair notice of what the claim is and the grounds upon which it rests. There are no factual allegations from which the court can discern the precise nature of the plaintiffs'

claim. The plaintiffs' claim is so vague that it does not provide the defendants with fair notice that would allow them to respond.

### F. Common Law Fraud and Conspiracy Claims

Fed. R. Civ. P. 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule is interpreted "'in harmony with the principles of notice pleading,' and to satisfy it, the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (*quoting Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). "In other words, the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Id.* (*quoting United States ex rel. Joshi v. St. Luke's Hosp.*, 441 F.3d at 556). This higher degree of notice is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations. *Id.* (citations omitted). Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *Id.*

The plaintiffs' allegations of fraud are woefully inadequate under the heightened pleading standards. With respect to conspiracy, the plaintiff alleges only that "by the above actions, and practices defendants have committed civil conspiracy under the Common Law of the State of Nebraska." There are no allegations of any agreement between the defendants or others and no allegations of concerted actions or any conduct undertaken in furtherance of an agreement. Accordingly, the court finds that the plaintiffs' complaint fails to state a claim on which relief can be granted.

IT IS ORDERED:

1. The defendants' motion to dismiss or alternatively a motion for summary judgment (Filing No. 15) is granted.

2. This action is dismissed with prejudice.

DATED this 8th day of October, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.